FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

99 OCT -8 PM 4: 22

U.S. DISTRICT COURT
N.D. OF ALABAMA

WESLEY LAUGHRIDGE,        }
                          }
    Plaintiff,            }
                          }
v.                        }
                          }
                          }    CASE NO. CV 98-PT-2918-E
AUTO-OWNERS INSURANCE     }
COMPANY, et al.,          }
                          }
    Defendants.           }
                          }

ENTERED

OCT  8 1999

## MEMORANDUM OPINION

Before the court is the plaintiff's Motion to Remand and the defendants' Objection to Magistrate Judge's Report and Recommendation[1], in which the defendants ask the court to disregard Magistrate Judge John Ott's recommendation that the Motion to Remand be granted. For the reasons stated below, the court finds that the objection is due to be overruled and the Motion to Remand is due to be granted.

## BACKGROUND

This plaintiff brought this action in state court after defendant Auto-Owners Insurance Company ("Auto-Owners") refused to pay for damage to his home allegedly caused by a sinkhole. The resident defendants, Carol Austin and Victoria Morris Agency, Inc. d/b/a Insurance Place, had previously sold the plaintiff an Auto-Owners homeowner's insurance

---

[1]The objection is offered by the two resident defendants, and the removal was accomplished by Auto-Owners. For ease of reference, however, the court will refer to the objection and the removal as though filed by all the defendants.

policy and sinkhole endorsement. The defendants removed the case to this court, arguing that the resident defendants were fraudulently joined and that this court therefore has diversity jurisdiction. The plaintiff filed a motion to remand, which was referred to the magistrate judge. The magistrate judge recommended that the motion to remand be granted, finding that the defendants had not met their burden of showing that the resident defendants were fraudulently joined. The defendants filed objections to the magistrate judge's recommendation and ask that the court hold instead that the resident defendants were fraudulently joined and that the motion to remand is therefore due to be denied.

## DISCUSSION

The defendants argue that the motion to remand is due to be denied because the resident defendants were fraudulently joined. In addressing the issue of fraudulent joinder, the Eleventh Circuit has stated as follows:

> In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). The burden of the removing party is a "heavy one." *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981).
>
> To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff. *Id.* at 549. The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties. *Id.*
>
> While "the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under *Fed. R. Civ. P.* 56(b)," *id.* at n. 9, the jurisdictional inquiry "must not subsume substantive determination." *Id.* at 550. Over and over again, we

> stress that "the trial court must be certain of its jurisdiction before embarking
> upon a safari in search of a judgment on the merits." *Id*. at 548- 49. When
> considering a motion for remand, federal courts are not to weigh the merits of
> a plaintiff's claim beyond determining whether it is an arguable one under state
> law. *See Id*. "If there is even a possibility that a state court would find that
> the complaint states a cause of action against any one of the resident
> defendants, the federal court must find that joinder was proper and remand the
> case to state court." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th
> Cir. 1983), *superseded by statute on other grounds as stated in Georgetown
> Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993).

*Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court. *See Cabalceta*, 883 F.2d at 1562. A claim of fraudulent joinder also must be supported by clear and convincing evidence. *Jones v. Triple Crown Service Co.*, 44 F. Supp. 2d 1339, 1342 (M.D. Ala. 1999) (citing *Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962), *cert. denied*, 376 U.S. 949, 84 S. Ct. 964, 11 L. Ed. 2d 969 (1964)).

The defendants' primary argument is that the plaintiff cannot possibly prove the element of detrimental reliance essential to his claims of fraud and fraudulent suppression against the resident defendants.[2] The defendants particularly emphasize that the court gave the plaintiff an opportunity to submit evidence that broader sinkhole coverage than that he bought is available. The defendants apparently believe that the court intended for the production or non-production of such evidence to decide the fraudulent joinder issue. While

---

[2]The defendants also argue that the plaintiff could not possibly prove that the resident defendants made any sort of misrepresentation to the plaintiff. The court agrees with the magistrate judge that it is possible that the plaintiff could establish that the resident defendants misrepresented or suppressed material facts related to the extent of sinkhole coverage. *See* Magistrate Judge's Report and Recommendation at 5-6.

3

the production of such evidence would lend further support for the court's holding herein, the failure to produce such evidence does not require a finding of fraudulent joinder.[3] The burden of proving that there is "no possibility" that the plaintiff can establish a claim against a resident defendant always remained on the defendants, even after the court gave the plaintiff an opportunity to present evidence of broader sinkhole coverage. The defendants' burden is a heavy one, and they are correct in arguing that there will be certain times when it is very difficult, if not impossible, to prove that a resident defendant is fraudulently joined. Since the burden was on the defendants, the fact that the plaintiff did not offer clear evidence of the availability of such coverage is not determinative of the fraudulent joinder issue.[4]

The defendants complain that the "no possibility" standard of proving fraudulent joinder, as it is applied by the magistrate judge, renders it virtually impossible for a defendant to prove fraudulent joinder in any context. They argue that such a standard would allow the plaintiff to overcome a fraudulent joinder argument by asserting that "little men from the planet Venus made misrepresentations to the plaintiff on behalf of these defendants,

---

[3]In their objection, the defendants cite an April 27, 1999 letter from the plaintiff acknowledging that he was unable to find broader commercially available sinkhole coverage in the time period allotted him by the court. That letter is not a part of the record, so the court cannot rely on it. Even if it were a part of the record, it would not change the result herein, since the defendants never met their burden of proof on fraudulent joinder and since the plaintiff also submitted argument and anecdotal evidence that broader sinkhole coverage exists.

[4]The plaintiff offered anecdotal evidence that broader sinkhole coverage exists, testifying that he knows a Ms. Beasley whose insurance company paid for property damage similar to his. (Pl. Depo. at 93-96). The defendants complain that the plaintiff has no evidence about the sort of insurance coverage Ms. Beasley had that would pay for such damage. This complaint undercuts their insistence that no sinkhole coverage better than theirs is available.

and thereby defrauded the plaintiff." The defendants' illustration, while cheeky and amusing, does not persuade. It is unproductive to compare the possibility that the plaintiff may have been able to obtain insurance coverage for his loss (whether from a company that more broadly interprets the language in the plaintiff's endorsement or from a company offering a sinkhole endorsement with broader language) with the possibility that little men from the planet Venus were transported to Earth to pose as insurance agents in order to defraud the plaintiff.[5] The defendants submitted the testimony of defendant Austin, in which she states that she is not aware of any broader sinkhole coverage than that purchased by the plaintiff. (Austin Depo. at 29-34). The defendants also submitted the affidavit of Johnny Johnson, the Rate Supervisor of the Insurance Division of the Alabama Department of Insurance, who stated that the plaintiff's sinkhole endorsement was virtually identical to those of the top ten sellers of homeowner's policies in Alabama (whose sales represent 75% of the state market

---

[5]The court notes that the hypothetical "little men from the planet Venus" action, if brought in federal court, would most likely be subject to immediate dismissal under Rule 12(b)(6) of the *Federal Rules of Civil Procedure* as a complaint that states no actionable claim. "Dismissal is appropriate when it appears beyond doubt that the plaintiff can prove no set facts in support of his claim which would entitle him to relief." *Hishon v. King & Spalding*, 467 U.S. 69 (1984). *See Rickels v. Rzeszewski*, 43 F.3d 1474 (Table), 1994 WL 709319, *1 (7th Cir. Dec. 19, 1994), citing *Sakovick v. City of Kankakee*, 130 F.R.D. 394 (C.D. Ill. 1990) (court dismissed plaintiff's claims that dentists put transistors in her bridge work so that the dentists could eavesdrop on her conversations, and that physicians had done something to her central nervous system that enabled the doctors to read her thoughts); *Savacool v. Federal Aviation Administration, et al.*, 1992 WL 109016 (E.D. Pa. May 11, 1992) (court dismissed as frivolous the plaintiff's claims that federal government had used various aircraft to "buzz" her as a form of psychological intimidation and harassment); *Morrison v. Martin*, 755 F. Supp. 683, 686 (E.D.N.C.) ("[t]o the extent that Morrison accuses [the defendants] of placing voices in his head to ask about his court case and emitting constant sound waves, the court takes judicial notice that impossible contentions cannot be true"), *aff'd*, 917 F.2d 1302) (4th Cir. 1990). Such claims would undoubtedly be subject to dismissal on similar grounds in state court, as well, and would thus meet the fraudulent joinder standard.

share) and that he is aware of no sinkhole endorsement commercially available in Alabama which provides broader coverage than does that of Auto-Owners. (Johnson Affidavit at ¶¶ 1-6). As much as the defendants would like to believe otherwise, this evidence does not so completely obliterate the possibility that the plaintiff could have obtained broader sinkhole coverage as to render it comparable to the possibility that one, some, or all of the insurance agents in Alabama are actually little men from the planet Venus, come to defraud us.[6] Neither does it constitute clear and convincing evidence that there is "no possibility" that the plaintiff could establish a cause of action for fraud or fraudulent suppression against the resident defendants.

The court notes that the magistrate judge's findings do not mean that the plaintiff is entitled to recover from the resident defendants. In fact, the defendants may very well prevail on a motion for summary judgment using the arguments they present here. A fraudulent joinder analysis examines whether there is "no possibility" the plaintiff could prevail and whether the claims are "fraudulent or frivolous." A summary judgment analysis under FED. R. CIV. P. 56(c) examines whether "the pleadings, depositions, answers to

---

[6]In a world where one can buy health insurance for household pets, it should hardly be outside the scope of imagination that insurance coverage may exist to protect against losses such as those suffered by the plaintiff. See "Weird Insurance" *Kiplinger's Personal Finance Magazine,* http://www.kiplinger.com//magazine/archives/1998/October/weird.htm, outlining insurance against losses sustained when the insured is abducted or ingested by aliens, hit by an asteroid, attacked by a ghost or impregnated by the Almighty. People can insure their singing voices, their wine collections and the life or virility of their horses. *Id.* People can buy ransom insurance, insurance to recreate a postponed wedding, and vacation insurance in the event that a trip is ruined by illness, injury, subpoena, hijacking or bad weather. *Id.* The possibility that people can buy insurance to protect against losses from "gradual" sinkholes does not, by comparison, seem exactly far-fetched.

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The latter standard is much easier to meet.[7] The evidence presented by the defendants, even when combined with the plaintiff's omission to present evidence of broader sinkhole coverage, does not constitute clear and convincing proof that there is "no possibility" that the plaintiff could prevail and that the plaintiff's claims against the resident defendants are "frivolous or fraudulent." Crowe, 113 F.3d at 1538, 1542. It may be enough, however, to show that

---

[7]The Eleventh Circuit has stated as follows:

For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law *might* impose liability on the facts involved." [*Big B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 550 (5th Cir. 1981 (quoting *Bobby Jones Garden Apartments v. Suleski*, 391 F.2d 172, 177 (5th Cir. 1968)] (emphasis added). Because the procedures are similar while the substantive standards are very different, district courts must exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them.

In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims. Although we have said that district courts may look beyond the face of the complaint, we emphasize that the district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent.

*Crowe v. Coleman*, 113 F.3d 1536, 1541-42 (11th Cir. 1997).

there is no genuine issue of material fact with respect to the element of detrimental reliance of the plaintiff's fraud and fraudulent suppression claims against the resident defendants. That is a question best left to the state courts.

## CONCLUSION

The court has considered the entire file in this action together with the Magistrate Judge's Report and Recommendation and has reached an independent conclusion that the Magistrate Judge's Report and Recommendation is due to be adopted and approved. The court hereby adopts and approves the findings and recommendation of the magistrate judge as the findings and conclusions of the court. The court further finds that the defendant's objection to the Magistrate Judge's Report and Recommendation is due to be overruled and that the plaintiff's motion to remand this case to state court is due to be granted. An appropriate order will be entered concurrently herewith.

**DONE** this 7TM day of October, 1999.

*/s/ Robert B. Propst*
**ROBERT B. PROPST**
Senior United States District Judge

8